No. 2408.—H. Bezou, Commissioner, *v.* Pike, Lapeyre & Brother. '

In this case the defendants discounted the note of the president of the Citizens' Mutual Insurance Company and took in pledge as collateral security the stock of the Citizens' Bank, owned by the company. The proceeds of the note went to the benefit of the insurance company to the knowledge and with the consent of the board of directors.

Held—That, waiving the question as to whether the president of the insurance company had the right to pledge the stock owned by the company, yet the knowledge of, and the acquiescence in, the pledge and the receipt of the proceeds by the board of directors. amounted to a ratification of his acts, and the company was thereby bound.

APPEAL from the Fourth District Court, parish of Orleans. *Théard,* J. *G. Schmidt,* for plaintiff and appellant. *Hayes & New,* for defendants and appellees

Howell, J. The plaintiff, as commissioner appointed to liquidate the affairs of the Citizens' Mutual Insurance Company, claims of defendants the sum of eighteen thousand dollars, the value of one hundred shares of the stock of the Citizens' Bank of Louisiana and the dividends accrued thereon, which he avers they illegally detain under pretense that it has been pledged to them by Omer Gaillard, late president of said company, which, even if true, does not authorize defendants to retain the said stock because the president had not the power to pledge it.

The defendants answer that, according to the usages of commerce, they discounted a note of the Citizens' Mutual Insurance Company through its president, O. Gaillard, for $10,000, upon a pledge of said stock, which note and pledge were renewed several times and increased to $15,000, and upon final maturity the pledge was sold for $425 less than the debt, which sum they claim in reconvention. They allege that the discount was made for the benefit of the insurance company and was used by it in the regular course of its business, and that said discounts and pledges were authorized and ratified by the board of directors of the company; and further that the company did business with them as bankers; that the proceeds of the discounts were placed to its credit and paid on the checks of the president and secretary.

Judgment was rendered as prayed for by defendants and the plaintiff appealed.

In the language of his counsel's brief: " The issues made in this cause on the merits present simply the question, whether the president of the insurance company was authorized to bind the company by his note and pledge the bank stock belonging to it for its payment?"

Concede that there was no resolution of the board of directors or provision in the by-laws of the company expressly authorizing the president to make the note and pledge, it is shown that they were made by the president and the proceeds drawn out of defendants'

bank upon the checks of the president and secretary and used for the benefit of the company to the knowledge of the directors, who, by their acquiescence, ratified the acts of the president and made them the acts of the company or corporation, which is vested with all the powers necessary for conducting its business and can act only through its officers and directors. The fourth article of the charter gives the directors " full power to do and perform all acts and things not herein provided for which may be necessary to carry into effect the object and purposes of the company."

The object of the company was to make insurance on various kinds of property against loss or damage by fire and water. By the sixth article of the charter the board of directors were empowered to invest the profits of the company or a portion of them in the purchase of bonds or stocks issued or created by or under the laws of the United States or of this State or the ordinances of the city, and make loans of said profits on pledge of any of said bonds or stocks. If they could thus invest their funds in the purchase of stocks or in loans on pledge thereof, they certainly possessed the power of converting such purchases or loans into cash by sale or pledge when money was needed to pay risks. Otherwise the object of the incorporation would fail. Making insurance involves necessarily the obligation to pay loss, and the means or funds of the company must be used for such payment and can not properly be so invested as to render such payment impossible, as would be the case if the investments could not be converted to cash.

We think it evident and unavoidable that the company, through its directors and officers, had the right to sell or pledge the stocks owned by it, and that if the president was not specially authorized by the board of directors to make the note and pledge in favor of defendants, the entry of the transaction in the books of the company and the drawing of the proceeds and using them for its benefit, brought knowledge to the directors and amounted to a ratification of the transaction.

The law of agency invoked by plaintiff's counsel is not properly applied by him in this case. A corporation, as an intellectual being, is vested with the powers necessary for the purposes for which it was incorporated, and as above said it can act only through its officers, who exercise those powers in the manner provided. The power or authority to make loans, execute notes, pledges, etc., by corporations is not derived from or regulated by the law of mandate as contained in the Civil Code, but from the law of its creation and if not conferred by the express letter of its charter, may be inferred or implied from the powers actually conferred. The powers of the attorneys or officers of the corporation, if not expressly determined by the charter or by-laws,

are regulated as those of other agents and their exercise may be ratified by the corporation as those of other agents may be ratified by their principals. R. C. C. 438 et seq., 3000, 3010 ; 23 An. 235.

The case of A. Levy et als. v. Mutual Benefit Life and Fire Insurance Company, 8 An. 380, relied on by plaintiff, differs from this in the fact that the directors in that case did an act in conflict or inconsistent with an express provision of the charter, to wit: the making a different use of the premium notes from that stipulated in the charter, while in this case the funds intended for the payment of losses were used for the purpose intended and it was a question within the discretion of the directors whether it was to the interest of the company to sell or to pledge the stock in question and in which their funds had been invested.

Judgment affirmed.